756 F.2d 1387
 9 Soc.Sec.Rep.Ser. 98, Medicare&Medicaid Gu 34,557
REGENTS OF the UNIVERSITY OF CALIFORNIA, on Behalf of
UNIVERSITY OF CALIFORNIA, DAVIS MEDICAL CENTER,
Plaintiff-Appellee,
v.
Margaret M. HECKLER, Secretary of Health and Human Services,
Defendant-Appellant.
 No. 83-2517.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 13, 1984.
Decided April 2, 1985.
 
 Michael A. Duncheon, Hanson, Bridgett, Marcus, Vlahos & Stromberg, San Francisco, Cal., for plaintiff-appellee.
 Jerry J. Bassett, San Francisco, Cal., for defendant-appellant.
 Appeal from the United States District Court for the Eastern District of California.
 Before PHILLIPS*, FLETCHER, and REINHARDT, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 The Secretary of Health and Human Services (Secretary), the agency responsible for managing the Medicare program, and the University of California, Davis Medical Center (UCDMC), a health care provider participating in the program, are in dispute over the amount of reimbursement due UCMDC for Medicare services rendered in fiscal year 1975-76. The Secretary appeals from the district court's decision that UCDMC was improperly denied reimbursement for certain costs it had incurred. The district court found the regulation under which these costs were excluded, 20 (now 42) C.F.R. Sec. 405.460 (1975), as construed by the Secretary, to be inconsistent with the statutory directive that all "reasonable costs" be reimbursed. See 42 U.S.C. Secs. 1395f(b)(1); 1395x(v)(1)(A) (1982). The Secretary contends that the regulation in question, as she construes it, represents a reasonable interpretation of the statute's language and is consistent with its underlying purpose.[1] For the reasons stated below, we affirm the judgment of the district court.
 
 I. BACKGROUND
 
 2
 A. Reimbursement to Providers Under the Medicare Act
 
 
 3
 This case arises under Title XVIII of the Social Security Act which established the federally funded health insurance program commonly known as "Medicare." 42 U.S.C. Secs. 1395-1395xx (1982). Under the Medicare program, the federal government reimburses eligible hospitals, nursing facilities, and home health agencies for the "reasonable cost" of covered services provided to Medicare beneficiaries.[2] See 42 U.S.C. Secs. 1395f(b)(1); 1395x(v)(1)(A) (1982).
 
 
 4
 The statute defines "reasonable cost" as the "cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. Sec. 1395x(v)(1)(A) (1982).[3] The Secretary may employ various methods in computing a provider's "reasonable costs" in accordance with this statutory definition. One such method, authorized by a 1972 amendment to the statute, involves the use of a schedule of limits that sets forth the amount of costs to be recognized as "reasonable." Id. The statute further directs the Secretary to provide for "suitable retroactive corrective adjustments" where the amount of reimbursement produced by the chosen methods of determining costs "proves either inadequate or excessive." Id.
 
 
 5
 Pursuant to her statutory authorization, the Secretary has from time to time promulgated regulations setting forth procedures for determining the amount of provider costs to be recognized as "reasonable" and therefore reimbursable under the Medicare program. This litigation concerns the legality of the regulation in effect during fiscal year 1975-76. See 20 (now 42) C.F.R. Sec. 405.460 (1975).[4] The challenged regulation provided that schedules of limits, based on general cost estimates, would be promulgated and that reimbursements would be limited to the amount set forth in those schedules.[5] The regulation provided for exceptions, exemptions, and adjustments from such pre-established limits only in certain narrowly defined circumstances. See 20 (now 42) C.F.R. Sec. 405.460(f) (1975). Excepted from the cost limits were expenses attributable to the provision of "atypical services" or to "extraordinary circumstances beyond the provider's control." Id. All expenses which exceeded the "reasonable cost" limit and did not fall within either category of recognized exceptions were deemed unreimbursable, without regard to whether the costs incurred were in fact reasonable.
 
 B. UCDMC's Claim for Reimbursement
 
 6
 The Davis Medical Center is one of five teaching hospitals operated by the University of California and is the major teaching facility for the University of California, Davis, School of Medicine. It serves a metropolitan area of nearly 880,000 people, and is a center for patient referral for a large region of Northern California and parts of Nevada and Oregon. The hospital is licensed for approximately 500 beds and offers a full range of in-patient services, diagnostic services, an ambulatory care program with over 80 clinics, a comprehensive mental health program, and a 24 hour emergency medical service. Specialized programs include a burn center, kidney transplant service, eye bank, regional mental health program, model family practice unit, neonatal intensive care unit, comprehensive rehabilitation center, and six specialized intensive care units.
 
 
 7
 Blue Cross of Northern California (Blue Cross) is the fiscal intermediary utilized by the Secretary in this case. It notified UCDMC in October, 1978, of its final determination of the amount of Medicare reimbursement due UCDMC for fiscal year 1975-76. Dissatisfied with Blue Cross' assessment of its "reasonable costs," UCDMC requested a hearing before the Provider Reimbursement Review Board (PRRB) pursuant to 42 U.S.C. Sec. 1395oo(a) (1982). The PRRB modified the intermediary's determination of UCDMC's reasonable costs, finding the hospital entitled to additional reimbursement for certain expenses it incurred in providing "atypical nursing services." The PRRB denied the hospital's request for reimbursement for other costs which it claimed were "reasonable." The Secretary, through the Deputy Administrator of the Health Care Financing Administration (HCFA), elected to review the PRRB decision and reversed the Board's determination that UCDMC was entitled to reimbursement for its costs associated with the atypical nursing services. The decision of the HCFA constituted the final decision of the Secretary. 42 U.S.C. Sec. 1395oo(f)(1) (1982).
 
 
 8
 UCDMC then brought suit in district court, claiming that the Secretary's decision violated the express mandate of the Medicare Act that all "reasonable costs" be reimbursed. At issue was approximately $525,000 in expenses for which UCDMC claimed it was unjustifiably denied reimbursement.[6] The district court, while upholding the Secretary's authority to establish a schedule of limits which presumptively defines "reasonable costs," further held that the Secretary is under a statutory duty to provide exceptions and exemptions to such limits that will ensure that reasonable costs actually incurred are reimbursed. The district court's conclusion was based, in large part, on the statutory provision which directs the Secretary to provide for "suitable retroactive corrective adjustments" whenever the amount of reimbursement determined by the chosen method of cost calculation proves to be "inadequate or excessive." See 42 U.S.C. Sec. 1395x(v)(1)(A)(ii) (1982). The district court remanded the case to the Secretary to allow her to review each claimed expense in order to determine whether it was in fact "reasonable" as defined by section 1395x(v)(1)(A). The Secretary was ordered to reimburse UCDMC for all costs which were found to be reasonably incurred.
 
 
 9
 On appeal, the Secretary vigorously challenges the district court's reading of the Medicare Act. She contends that the statute authorizes her to establish limits on the amount of reimbursement to be recognized as "reasonable," and that any costs which exceed such limits, whether reasonable in fact or not, need not be reimbursed. She claims that the district court erred by reading the corrective adjustment clause as demanding a case-by-case review of the adequacy of the amount of reimbursement deemed "reasonable". She concludes that because the expenses in question exceed the reimbursement limit applicable to UCDMC in fiscal year 1975-76,[7] and because they do not fall within any of the then existing exceptions to such limit, the hospital is not entitled to reimbursement, regardless of whether those expenses were in fact reasonable. We reject the Secretary's interpretation of the statute.
 
 II. JURISDICTION
 
 10
 UCDMC reasserts its argument that we are without jurisdiction to hear this appeal because the district court's remand order is not an appealable "final decision."[8] See 28 U.S.C. Sec. 1291 (1982). We disagree.
 
 
 11
 In Stone v. Heckler, 722 F.2d 464 (9th Cir.1983), we recently considered the finality of a remand order quite similar to that involved here. In Stone, we recognized that section 1291 must be given a "practical rather than a technical construction," id. at 467 (quoting Cohen v. Beneficial Industrial Loans Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949)), and that the "finality" determination necessitates an evaluation of competing policy considerations--"the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." Stone, 722 F.2d at 467 (quoting Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 171, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974)). We concluded that the district court's remand order, which instructed the Secretary to apply a legal standard significantly different from that which she had been using in determining disability, constituted an appealable final judgment. Stone, 722 F.2d at 467. We explained that refusing appellate jurisdiction might result in the agency's application of an incorrect legal standard. Id. Moreover, we pointed out that if the legal standard formulated by the district court were wrong, the administrative proceeding would be wasted. Id. Thus, we concluded that reviewing the correctness of the legal standard articulated by the district court "will promote the least possible waste of judicial resources." Id.[9]
 
 
 12
 Stone is controlling here. On remand the Secretary would have to determine the reasonableness of each of UCDMC's claimed expenses. As in Stone, if the legal standard propounded by the district court were incorrect, the Secretary would be required to engage in a wholly wasted proceeding. Moreover, if upon applying the incorrect legal standard on remand, the Secretary were to conclude that the expenses in question had not been reasonably incurred, the propriety of that standard might prove immune from our review. We find the remand order involved here to be identical in all material respects to that considered in Stone, and thus conclude that it is a properly appealable "final judgment."
 
 III. STANDARD OF REVIEW
 
 13
 We review de novo the district court's conclusion that the Secretary's failure to identify and reimburse all of UCDMC's "reasonable costs" violated the statutory directive of the Medicare Act. Thus, we review the Secretary's action under the same standard as did the district court.
 
 
 14
 Judicial review of Medicare reimbursement decisions is governed by the Administrative Procedure Act, 5 U.S.C. Secs. 701-06 (1982), which requires a court to set aside agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law ..." Id. at Sec. 706. We have emphasized that "[a]gency regulations must be consistent with and in furtherance of the purposes and policies embodied in the congressional statutes which authorize them." Pacific Coast Medical Enterprises v. Harris, 633 F.2d 123, 131 (9th Cir.1980).
 
 
 15
 Although our decisions have recognized that an agency's interpretation of the statutory scheme under which it operates is entitled to considerable deference, see, e.g., Montana Power Co. v. EPA, 608 F.2d 334, 344-45 (9th Cir.1979), we have made clear that "our deference does not extend to agencies' construction which conflict with statutory directives." Pacific Coast Medical Enterprises, 633 F.2d at 131. We will not abdicate our judicial responsibility by affirming administrative actions which are "inconsistent with a statutory mandate or ... frustrate the congressional policy underlying a statute." Id. at 132. Thus, if the Secretary's regulations are found to deviate from congressional will, either on their face or as applied, they must be invalidated as contrary to law. With these principles in mind, we now examine the Secretary's application of her regulations to UCDMC's claim for reimbursement.
 
 
 16
 IV. THE SECRETARY HAS A STATUTORY OBLIGATION TO REIMBURSE ALL REASONABLE COSTS
 
 
 17
 A. The Statute Directs The Secretary To Make Corrective Adjustments Whenever Necessary To Ensure That All Reasonable Costs Are Reimbursed
 
 
 18
 In promulgating the Medicare Act of 1965, Congress made clear its intent that providers were to be reimbursed, as nearly as possible, for all costs necessarily incurred in the efficient delivery of health care services to Medicare beneficiaries. The bill was designed to avoid shifting the burden of costs incurred in the treatment of Medicare patients to others not covered by the program while simultaneously ensuring that the costs of services provided to other patients was not borne by the program.[10]
 
 
 19
 The statute directs the Secretary to implement these goals by reimbursing providers for the lesser of the "reasonable cost" of covered services or the "customary charges" associated with such services. 42 U.S.C. Sec. 1395f(b)(1) (1982). In this case, both parties agree that UCDMC's reimbursement is to be determined under the "reasonable cost" standard.
 
 
 20
 As mentioned, the statute defines "reasonable cost" as the actual cost less any portion "unnecessary in the efficient delivery of needed health services." 42 U.S.C. Sec. 1395x(v)(1)(A) (1982). Although the statute authorizes the Secretary to employ various methods in determining the reasonableness of a provider's costs, it mandates that the Secretary "provide for the making of suitable retroactive corrective adjustments where ... the aggregate reimbursement produced by the methods of determining costs proves either inadequate or excessive." Id.
 
 
 21
 Numerous courts have construed section 1395x(v)(1)(A) as imposing a statutory duty upon the Secretary to make suitable corrective adjustments whenever the amount of reimbursement determined by the chosen method of cost calculation fails to adequately reimburse all reasonable costs. In Kingsbrook Jewish Medical Center v. Richardson, 486 F.2d 663 (2d Cir.1973), the Second Circuit, recognizing that the "plain words [of the statute] do not require interpretative gymnastics," read section 1395x(v)(1)(A) as a congressional directive to the Secretary to issue regulations providing for corrective adjustments whenever "a method of determining costs ... produces an inadequate reimbursement." Id. at 669. Similarly, the Fifth Circuit has concluded that the statutory language means exactly what it says: "Upon determining that one of [her] cost reimbursement regulations produces inadequate or excessive payments to providers, the Secretary has a statutory duty to make suitable retroactive corrective adjustments." Springdale Convalescent Center v. Mathews, 545 F.2d 943, 954 (5th Cir.1977) (emphasis added); see also Humana of South Carolina, Inc. v. Califano, 590 F.2d 1070, 1079 n. 66 (D.C.Cir.1978) (Secretary has "statutory duty" to make corrective adjustments whenever method of cost reimbursement proves inadequate); Whitecliff, Inc. v. United States, 536 F.2d 347, 351-52, 210 Ct.Cl. 53 (1976) (statutory provision imposes "duty" upon Secretary to make corrective adjustments when methods of cost-determination lead to inadequate reimbursement), cert. denied, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977).
 
 
 22
 We too read section 1395x(v)(1)(A) as imposing a duty upon the Secretary to ensure that the necessary corrective adjustments are made whenever the methods of cost calculation fail to reimburse a provider for its reasonable costs. Such a reading is not only compelled by the plain language of the section but is entirely consistent with the statute's overriding objective to ensure that the Medicare program pay all of its own costs. See, e.g., Professional Medical Care Home, Inc. v. Harris, 644 F.2d 589, 593 (7th Cir.1980).
 
 
 23
 B. The 1972 Amendments Did Not Alter The Secretary's Obligation To Reimburse All Reasonable Costs
 
 
 24
 The Secretary contends that reading the statute as imposing a duty to reimburse all costs that are in fact reasonable is no longer tenable in view of the 1972 amendments to section 1395x(v)(1)(A). See Social Security Amendments of 1972, Pub.L. No. 92-603, Sec. 223, 86 Stat. 1329, 1393-94 (1972). The Secretary bases her argument on the fact that Congress called upon her to experiment with the use of a prospective payment scheme for the reimbursement of Medicare providers. Id. at Sec. 222, 86 Stat. at 1390-93. In developing such a program, she was authorized to promulgate regulations establishing cost limits on the amount of reimbursement that would be recognized as "reasonable." Id. at Sec. 223, 86 Stat. at 1393. These cost limits were to be based on estimates of the "necessary" expenses to be incurred.
 
 
 25
 The Secretary urges that the 1972 amendments authorize her to establish a schedule of limits that is final and binding, with such exceptions and exemptions as she deems appropriate. She contends that all costs which exceed and are not excepted from such limits are per se unreasonable and therefore nonreimbursable. She need not, in her view, engage in a case-by-case examination of the reasonableness of a provider's costs.
 
 
 26
 According to the Secretary's construction of the amended statute, the term "inadequate or excessive" which appears in section 1395x(v)(1)(A) is not relevant to the question of reasonableness. The corrective adjustment clause, she claims, is merely designed to ensure that the actual amount of reimbursement paid in a given year coincides with the amount the Secretary has determined to be "reasonable." In effect, she reads the clause to require no more than a year-end balancing of the books. Numerous Courts have rejected the Secretary's suggestion that the corrective adjustment clause of section 1395x(v)(1)(A) merely contemplates a year-end balancing of the monthly installments received by a provider with the aggregate due it for the year. See, e.g., Springdale Convalescent Center, 545 F.2d at 954; Kingsbrook Jewish Medical Center, 486 F.2d at 669-70. The Medicare Act provides for two different types of adjustments: (1) a year-end adjustment to rectify errors produced by the monthly installment payment procedure, see 42 U.S.C. Sec. 1395g (1982); and (2) retroactive corrective adjustments whenever necessary to correct flaws in the determination of the aggregate reimbursement due a provider as a result of inaccurate methods of determining reasonable costs. 42 U.S.C. Sec. 1395x(v)(1)(A) (1982). That the retroactivity clause of section 1395x(v)(1)(A) was not intended to merely ameliorate auditing errors is evident by Congress' provision for such relief in section 1395g.
 
 
 27
 Moreover, the Secretary's reading of the amended statute is inconsistent with the plain language employed by Congress. On its face, the corrective adjustment clause is applicable regardless of the particular method of determining costs employed by the Secretary. The 1972 amendments, in authorizing the Secretary to adopt cost limits, merely added another method of cost calculation to those already recognized as legitimate by the statute. The utilization of cost limits, like each of the other methods permitted by the statute, remains subject to Congress' clear command that "corrective adjustments" be made whenever the methods of determining reimbursable costs prove to be "inadequate or excessive." The Secretary's interpretation would render the corrective adjustment clause nugatory in the case of one particular method of calculating costs. That Congress did not intend section 1395x(v)(1)(A) to be construed in that manner is readily apparent from the very organization and structure of the section.
 
 
 28
 We construe the 1972 amendments as authorizing the Secretary to develop and apply presumptive cost limits, subject to corrective adjustment when necessary. Our construction is supported by the legislative history behind the amendments. The House and Senate reports accompanying the cost limit legislation clearly evidence Congress' intent that the limits were to operate on a presumptive, rather than conclusive, basis and that providers would have the right to demonstrate their entitlement to reimbursement in excess of those limits: "the evaluation of the costs necessary in delivering covered services to beneficiaries would be operated on a class and a presumptive basis ..." H.R.Rep. No. 231, 92nd Cong., 2nd Sess., reprinted in 1972 U.S.Code Cong. & Ad.News 4989, 5070 (emphasis added) [hereinafter cited as House Report]; see also S.Rep. No. 1230, 92nd Cong., 2nd Sess. 188 (1972) [hereinafter cited as Senate Report]; "[p]roviders would, of course, have the right to obtain reconsideration of their classification for purposes of cost limits applied to them and to obtain relief from the effect of the cost limits on the basis of evidence of the need for such an exception." House Report, supra, at 5071; see also Senate Report, supra, at 189 (emphasis added).
 
 
 29
 The Secretary contends that the 1972 amendment's change to a scheme of payments based on predetermined cost estimates was designed to eliminate the need for individual reviews of the reasonableness of providers' claims. If this were Congress' principal objective in enacting the 1972 amendments, that objective would be substantially realized as a result of the use of presumptive cost limits. Following the 1972 amendments, the Secretary is no longer required to review all claims for reasonableness but only those in which a provider challenges the adequacy of the reimbursement resulting from application of the presumptive cost limits.
 
 
 30
 In any event, we do not agree that one of Congress' principal purposes in adopting the 1972 amendments was to reduce the Secretary's workload. Rather, the cost limit legislation was designed to enable the Secretary more readily to identify and disallow costs resulting from inefficiency or the provision of unneeded or excessive services. See Senate Report, supra, at 187. Prior to the 1972 amendments, reimbursements were calculated individually for each provider on a retrospective basis. That method generally led to reimbursement for all costs which providers had incurred, whether necessary and efficient or not, because it was extremely difficult for the Secretary to establish that a specific cost was unreasonable. See House Report, supra, at 5069-70.[11] The use of prospective payments regulated by a schedule of limits shifted the burden of proving the reasonableness of costs exceeding the presumptive limit to the provider. Id. at 5070. Furthermore, the 1972 amendments were designed to encourage providers to hold down rapidly escalating health care costs. This was accomplished, in part, by putting providers on notice that all costs in excess of the limit established by the Secretary would be considered presumptively unreasonable. Thus, like the objective suggested by the Secretary, Congress' actual objectives in adopting the 1972 amendments are wholly compatible with the use of presumptive limits.
 
 
 31
 Both the structure and organization of the statute as amended and the legislative history of the 1972 amendments lead us to conclude that those amendments did not modify or eliminate the Secretary's statutory obligation to reimburse providers for reasonable costs actually incurred. Nor did they modify or eliminate the Secretary's duty to make corrective adjustments when, notwithstanding her use of a permissible method of cost calculation, the result in a particular case would be inconsistent with that statutory mandate. Rather, the 1972 amendments authorized the Secretary to develop a schedule of limits that was to be applied on a presumptive basis, a schedule that was to be subject to the over-riding requirement that "corrective adjustments" be made whenever the actual reasonable costs exceed the established limits.
 
 
 32
 C. The Cases Relied Upon By The Secretary Do Not Support Her Authority To Apply The Cost Limits In A Conclusive Manner
 
 
 33
 The Secretary draws upon a number of our decisions, as well as a recent Supreme Court opinion, as support for her argument that she may apply the cost limits in a final and conclusive, rather than a presumptive, manner. We read those cases differently.
 
 
 34
 For example, the Secretary contends that in California Hospital Association v. Obledo, 602 F.2d 1357 (9th Cir.1979), we recognized her authority to employ absolute cost limits in determining the amount due a Medicare provider. In fact we did nothing of the sort. Although we recognized that the 1972 amendments authorized the Secretary to impose ceilings on reimbursable costs, id. at 1359, we expressly cautioned that "[s]ome limits might be so arbitrary or restrictive as to preclude the payment of 'reasonable cost' as required by law ..." Id. at 1360-61 (emphasis added). Thus, Obledo actually belies the Secretary's suggestion that she has the statutory authority to define conclusively and finally "reasonable costs." To the contrary, the Secretary's authority to promulgate limits on reimbursable costs is necessarily subject to her statutory obligation to ensure that all reasonable costs are ultimately reimbursed.
 
 
 35
 Similarly, we find the Secretary's reliance on Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983), to be misplaced. In Campbell, the Supreme Court upheld the Secretary's authority to utilize, in certain cases, a matrix of medical-vocational guidelines as conclusive evidence of a disability claimant's employability in the national economy. However, the Court noted that the guidelines may not be applied if they fail to describe accurately a claimant's particular limitations. Id. at 462 n. 5, 103 S.Ct. at 1955 n. 5; see also Stone v. Heckler, 722 F.2d at 468. Moreover, the Court recognized that the regulations afforded each claimant an "ample opportunity" to demonstrate that the guidelines ought not be applied to his individual case. Campbell, 461 U.S. at 467, 103 S.Ct. at 1957. Thus, Campbell suggests, consistent with what we hold here, that the Secretary must afford claimants the opportunity to demonstrate that the application of a particular rule to the facts of their case would produce a result that is contrary to the statutory mandate.
 
 
 36
 Finally, the Secretary attempts to justify her interpretation of the statute by referring to a series of cases in which we upheld her use of a prophylactic rule in making reimbursement decisions allegedly similar to those involved here. See, e.g., Goleta Valley Community Hospital v. Schweiker, 647 F.2d 894 (9th Cir.1981); American Hospital Management Corp. v. Harris, 638 F.2d 1208 (9th Cir.1981); Marina Mercy Hospital v. Harris, 633 F.2d 1301 (9th Cir.1980). We find the principles established in those cases of little relevance.
 
 
 37
 The cases invoked by the Secretary deal with a narrow, limited and specific issue. They involve a regulation, 42 C.F.R. Sec. 405.427 (1984), which governs reimbursements for transactions involving "related organizations." The regulation limits the amount of the provider's reimbursement to the amount the related organization could have received, i.e., the cost incurred by the related organization.
 
 
 38
 The "related organization" regulation differs fundamentally from the one before us here; it does not represent a method of determining whether particular costs are "reasonable," but rather whether certain expenses may properly be regarded as "costs" at all. See Pasadena Hospital Association, Ltd. v. United States, 618 F.2d 728, 732-33, 223 Ct.Cl. 72 (1980). The "related organization" regulation embodies the Secretary's judgment that the only legitimate cost is the outside cost to the business viewed as a whole. Put differently, the cost is that initially incurred by the business rather than that cost plus an additional charge assessed in connection with an intra-organizational transaction. We have upheld this judgment as rationally related to both the language and purpose of the Medicare Act.
 
 
 39
 Moreover, the reimbursement limit embodied in section 405.427 does not operate in a final and conclusive manner; rather, there is a specific exception for any provider who can demonstrate that the presumption of artificially-inflated costs is inapplicable to its particular claim. See 42 C.F.R. Sec. 405.427(d) (1984). Of especial significance is the fact that a provider is excepted from the regulation's reimbursement limit if it can establish, among other things, that the costs in question were comparable to those customarily charged in the open market; i.e., that the costs were, in fact, "reasonable." Id. In American Hospital Management Corp., one of the cases invoked by the Secretary, we specifically recognized the import of these exceptions: "The regulation ... further narrows the scope of 'related entity' by exempting from its coverage providers who demonstrate that the transaction in question meets the conditions set out in subsection (d). We therefore conclude that the regulation, hedged as it is by a reasonable exception, is a proper exercise of the Secretary's rule making authority ..." 638 F.2d at 1213 (emphasis added); see also Northwest Hospital, Inc. v. Hospital Service Corp., 687 F.2d 985, 993-94 (7th Cir.1982) ("Section 405.427 does not prohibit reimbursement for the reasonable costs of materials and services obtained from related-party suppliers; it merely establishes a rebuttable limitation on costs which will be deemed reasonable (and hence reimbursable).").
 
 
 40
 In summary, the "related organization" regulation simply establishes a rule that, in certain limited circumstances, a transfer of assets between related entities does not involve a "cost" to the organization as a whole; moreover, the regulation permits a provider to rebut the presumption where good reason for deviating from the rule exists. Thus, there is no conflict between the rule established by that regulation and the obligation imposed on the Secretary by the statute. Accordingly, the cases upholding the "related organization" regulation do not stand as authority for the arguments advanced by the Secretary.
 
 V. CONCLUSION
 
 41
 The Secretary determined that certain of UCDMC's claimed expenses exceeded the applicable cost limit established under her regulation and that those expenses did not fall within either category of recognized exceptions. As a result, she denied UCDMC reimbursement for those claims without addressing its contention that the expenses were in fact reasonable, i.e., necessarily incurred in the efficient delivery of needed health services. The district court properly held that the cost limits were presumptive rather than conclusive. Accordingly, we uphold its order remanding the case to the Secretary to (1) review the claimed expenses to determine whether they were, in fact, reasonable, and (2) make such corrective adjustment as may be necessary.
 
 
 42
 AFFIRMED.
 
 
 
 *
 Honorable Harry Phillips, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 On appeal, UCDMC does not challenge the Secretary's construction of the regulation
 
 
 [2]
 Medicare providers are reimbursed for their services either by the Secretary or, more commonly, by certain private organizations acting as fiscal intermediaries pursuant to contract with the Secretary. 42 U.S.C. Sec. 1395h(a) (1982). Among other responsibilities, these intermediaries review the cost reports of providers and determine the amount of reimbursement which accurately reflects the "reasonable cost" of the Medicare services provided by the health care organizations
 
 
 [3]
 The complete statutory definition reads as follows:
 The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies and services; except that in any case to which paragraph (2) or (3) applies, the amount of the payment determined under such paragraph with respect to services involved shall be considered the reasonable cost of such services. In prescribing the regulations referred to in the preceding sentence, the Secretary shall consider, among other things, the principles generally applied by national organizations or established prepayment organizations (which have developed such principles) in computing the amount of payment, to be made to persons other than the recipients of services, to providers of services on account of services furnished to such recipients by such providers. Such regulations may provide for determination of the costs of services on a per diem, per unit, per capita, or other basis, may provide for using different methods in different circumstances, may provide for the use of estimates of costs of particular items or services, may provide for the establishment of limits on the direct or indirect overall incurred costs or incurred costs of specific items or services or groups of items or services to be recognized as reasonable based on estimates of the costs necessary in the efficient delivery of needed health services to individuals covered by the insurance programs established under this subchapter, and may provide for the use of charges or a percentage of charges where this method reasonably reflects the costs. Such regulations shall (i) take into account both direct and indirect costs of providers of services (excluding therefrom any such costs, including standby costs, which are determined in accordance with regulations to be unnecessary in the efficient delivery of services covered by the insurance programs established under this subchapter) in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs, and (ii) provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive.
 42 U.S.C. Sec. 1395x(v)(1)(A) (1982).
 
 
 [4]
 20 C.F.R. Sec. 405.460 (1975) provides:
 (a) Principle. In the determination of the allowability of provider costs, costs estimated to be in excess of those necessary in the efficient delivery of needed health services are excluded. Such estimates may be made with respect to direct or indirect overall costs or costs of specific items or services, or groups of items or services and upon publication in the FEDERAL REGISTER will constitute limits on amounts otherwise payable under the program. These limits will be imposed prospectively and may be on a per diem, per visit, or other basis.
 (b) Application. In determining the limits to be applied, providers may be classified by type of provider (e.g., hospitals, skilled nursing facilities, and home health agencies) and within each provider class by such factors as the Secretary shall find appropriate and practical, such as:
 (1) Type of services rendered;
 (2) Geographical area where services are rendered, allowing for grouping of noncontiguous areas having similar demographic and economic characteristics;
 (3) Size of institution;
 (4) Nature and mix of services rendered; or
 (5) Type and mix of patients treated.
 (c) Data. In establishing limits, the estimates of the costs necessary for efficient delivery of health services may be based on cost reports or other data providing indicators of current costs, with current and past period data being adjusted to arrive at estimated costs for the prospective periods to which limits shall be applied.
 (d) Notice of limits to be imposed. Prior to the onset of a cost period to which a limit shall be applied, a notice shall be published in the Federal Register establishing the limits to be applied to an identified cost and type and class of provider of service.
 (e) Provider rights to review. A request by a provider for review of the determination of an intermediary concerning classification for, exceptions to, or exemptions from the cost limits imposed under the provisions of this section shall be made to the intermediary under the provisions of p 405.490-405.499.
 (f) Exceptions, exemptions, and adjustments. The following types of exceptions, exemptions, and classification adjustments may be granted under this section but only upon the provider's demonstration that the conditions indicated are present:
 (1) Reclassification. A provider shall be entitled to obtain adjustment of its classification by the intermediary for the purpose of cost limits applied under this section on the basis of evidence that such a classification is at variance with the criteria specified in promulgating limits under paragraph (d) of this section.
 (2) Exception of cost of atypical services. Where the actual cost of items or services furnished by a provider exceeds the applicable limit by reason of the provision of items for services that are atypical in nature and scope as compared to the services generally provided by institutions similarly classified and appropriate reason exists for the provision of such items or services, the limits may be adjusted upward to reflect any added costs flowing from the delivery of such items or services. Such adjustments may only be made where the provider demonstrates: (i) The provision of the atypical items or services were by reason of the special needs of the patients treated and necessary in the efficient delivery of needed health care, or (ii) the added costs flow from approved educational activities (as described in Sec. 405.421) to the extent such costs are atypical (although reasonable) for providers in the comparison group. In addition, such adjustments may be made only to the extent that such justified costs are separately identified by the provider and can be verified by the intermediary.
 (3) Exceptions because of extraordinary circumstances. Where a provider's costs exceed the limits due to extraordinary circumstances beyond the control of the provider, the provider may request an exception from the cost limits to the extent that the provider shows such higher costs result from the extraordinary circumstances. These circumstances may include but are not limited to increased costs attributable to strikes, fire, earthquake, flood, or similar unusual occurrences with substantial cost effects.
 (4) Exemption as sole community provider. The limitation on costs imposed under this section shall not be applicable where a provider by reason of factors such as isolated location or absence of other providers of the same type, is the sole source of such care reasonably available to beneficiaries.
 * * *
 
 
 [5]
 In accordance with this regulation, the Secretary issued a "schedule of limits" applicable as of July 1, 1975. See 40 Fed.Reg. 23,622 (1975). The schedule created groupings of hospitals for the purpose of establishing uniform, prospective limits on reimbursable costs. Hospitals were classified according to three criteria: their presence within a Standard Metropolitan Statistical Area (SMSA); per capita income of residents in the particular SMSA; and bed size of the institution
 
 
 [6]
 UCDMC claimed but was denied reimbursement for expenses stemming from the following sources: the provision of "atypical routine nursing services"; "atypical nursing administrative costs"; "atypical laundry and linen services"; "extraordinary costs associated with housekeeping and plant engineering"; and "administrative costs resulting from the installation of a new electronic data processing system."
 
 
 [7]
 UCDMC was subject to a basic cost limit of $89 per Medicare patient day for all in-hospital patient services
 
 
 [8]
 The jurisdictional argument has been previously decided adversely to UCDMC by a motions panel of this court. Regents of the University of California v. Heckler, No. 83-2517 (9th Cir. Jan. 10, 1984) (unpublished order). The government's suggestion that UCDMC cannot now raise the finality argument before a merits panel is without basis. Challenges to this court's jurisdiction may be raised at any stage of the proceedings by either party or by the court itself. See, e.g., Hoohuli v. Ariyoshi, 741 F.2d 1169, 1171 n. 1 (9th Cir.1984); In re Exennium, Inc., 715 F.2d 1401, 1402 (9th Cir.1983)
 
 
 [9]
 We recognize that Stone relied in part upon the reasoning of a Fifth Circuit opinion, Newpark Shipbuilding & Repair, Inc. v. Roundtree, 698 F.2d 743 (5th Cir.1983), which has since been reversed by an en banc panel of that court, see Newpark Shipbuilding & Repair, Inc. v. Roundtree, 723 F.2d 399 (5th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 88, 83 L.Ed.2d 35 (1984). Without passing judgment on the wisdom of the Fifth Circuit's action, we reaffirm that Stone remains the controlling authority in this circuit
 
 
 [10]
 The Senate Report accompanying the Medicare Act clearly identifies Congress' intent:
 Although [reimbursement] may be made on various bases the objective, whatever method of computation is used, will be to approximate as closely as practicable the actual cost (both direct and indirect) of services rendered to the beneficiaries of the program so that under any method of determining costs, the costs of services of individuals covered by the program will not be borne by individuals not covered, and the costs of services of individuals not covered will not be borne by the program.
 S.Rep. No. 404, 89th Cong., 1st Sess., reprinted in 1965 U.S.Code Cong. & Ad.News 1943, 1976.
 
 
 [11]
 The House Committee report explained that the pre-1972 law "generally limits exercise of the authority to disallow costs [that are not reasonable] to instances that can be specifically proved on a case-by-case basis. Clear demonstration of the specific reason that a cost is high is generally very difficult." House Report, supra, at 5069-70