CITY OF LYNN & another[1] *vs.* RATE SETTING COMMISSION.

Essex.    December 10, 1985. — February 5, 1986.

Present: GREANEY, C.J., PERRETTA, & FINE, JJ.

*Administrative Law*, Rate setting, Judicial review. *Proposition 2½. Municipal Corporations*, Nursing homes.

Certain regulations of the Rate Setting Commission placing a ceiling on per diem rates for reimbursement by the Commonwealth to operators of long-term health care facilities, including municipalities providing public nursing home services, did not violate G. L. c. 29, § 27C, the provision of Proposition 2½ preventing involuntary imposition on cities and towns of cost obligations resulting from statutes and administrative rules or regulations. [581-584]

CIVIL ACTION commenced in the Superior Court Department on March 2, 1984.

The case was heard by *John P. Forte*, J., sitting under statutory authority.

*Kenneth A. Behar* for the plaintiffs.

*Madeline Mirabito Becker*, Assistant Attorney General, for the defendant.

*Russell B. Higley*, City Solicitor, for the city of Cambridge & another, amici curiae, & *Mary P. Harrington*, Assistant City Solicitor, for the city of Salem & another, amici curiae, submitted a brief.

FINE, J.    The city of Lynn owns and operates a licensed public medical institution which provides nursing home services to patients, including those eligible for benefits under the Massachusetts Medicaid program.[2] Lynn brought this action against the Rate Setting Commission (commission), seeking a declaration pursuant to G. L. c. 231A that certain of the com-

---

[1] The Lynn Public Medical Institution.

[2] G. L. c. 118E.

mission's regulations, 114.2 Code Mass. Regs. §§ 2.04 (6) and 2.05 (1) (1982, and as further amended), which place a Statewide ceiling on per diem rates for reimbursement by the Commonwealth to operators of long-term care facilities, including nursing homes such as that operated by Lynn, violate G. L. c. 29, § 27C(*c*), the "local mandate" provisions of Proposition 2½ (St. 1980, c. 580, § 2). The parties filed cross motions for summary judgment. Lynn's motion was accompanied by affidavits supporting its allegation that the regulations, adopted for the first time after January 1, 1981, resulted in the imposition of additional costs for which it received no reimbursement from the Commonwealth.[3] From the judge's favorable action on the commission's motion, Lynn appeals.

At issue is the relationship between Proposition 2½ and the elaborate rate-setting scheme encompassed in statutes and regulations. We rule that, in this instance at least, there is no conflict between G. L. c. 29, § 27C(*c*), and the relevant statutes and regulations governing the operation of the commission. We examine the relevant portions of each statutory scheme in turn.

*Proposition 2½.*

"At the November, 1980, general election, acting under the initiative process of the Constitution of the Commonwealth, the voters adopted as chapter 580 of the Acts of 1980 a tax limitation measure commonly known as Proposition 2½." *Massachusetts Teachers Assn.* v. *Secretary of the Commonwealth*, 384 Mass. 209, 212 (1981). Among its provisions is the "local mandate" section, G. L. c. 29, § 27C, as amended by St. 1981, c. 782, §§ 4 through 7, which in relevant part provides:

"Notwithstanding any provision of any special or general law to the contrary:

(*a*) Any law taking effect on or after January [1, 1981,] imposing any direct service or cost obligation upon any

---

[3] Lynn claims to have incurred such additional costs in the amount of $74,352.44 for the fiscal year ending June 30, 1983, and $123,039.42 for the fiscal year ending June 30, 1984.

city or town shall be effective in any city or town only if [the municipality accepts the law or the Legislature provides for the Commonwealth to assume such cost].
" . . . .

(*c*) Any administrative rule or regulation taking effect on or after January [1, 1981,] which shall result in the imposition of additional costs upon any city or town shall not be effective until [the Legislature has provided for the Commonwealth to assume such cost]."

Subsection (*d*) gives cities and others the right to request that the division of local mandates of the Department of the State Auditor, see G. L. c. 11, § 6B, determine whether such costs have been paid in full by the Commonwealth and, if not, to determine the amount of any deficiency. Subsection (*e*) gives cities and others the right to file a petition in the Superior Court for reimbursement of such costs. In such an action, a determination by the division of local mandates of the amount of any deficiency is prima facie evidence of the amount necessary to reimburse the municipality.[4]

The local mandate provisions have been described as being "concerned with preventing the involuntary imposition on cities and towns of certain direct service or cost obligations resulting from statutes and administrative rules or regulations" and as setting forth "the requirement that the Commonwealth assume the cost, at least, of any new law or regulation imposing any direct service or cost obligation on any city or town without its consent." *Massachusetts Teachers Assn.* v. *Secretary of the Commonwealth*, 384 Mass. at 216 and 221.

It is subsection (*c*) of G. L. c. 29, § 27(C), dealing with State administrative rules and regulations, upon which Lynn relies. We are unaware of any other case involving a claim by a municipality based upon that particular provision. Subsection (*a*), dealing with State statutes, however, *has* been the subject of litigation. In *Lexington* v. *Commissioner of Educ.*, 393

---

[4] We do not reach the issue whether Lynn was required to exhaust its remedies before the division of local mandates before bringing this action.

Mass. 693 (1985), it was held that, because the Legislature did not appropriate the funds necessary to cover the costs imposed, Lexington was not obligated to comply with a statute, adopted after January 1, 1981, requiring cities and towns to provide transportation for private school students.

*The Rate Setting Mechanism.*

General Laws c. 6A, § 32, as amended through St. 1983, c. 687, § 1, provides in pertinent part:

> "There shall be a rate setting commission, hereinafter called the commission, which shall have the sole responsibility for establishing fair, reasonable and adequate rates to be paid providers of health care services by governmental units . . . . The commission: (1) shall determine, after public hearing, at least as often as annually, for institutional providers . . . the rates to be paid by each governmental unit to providers of health care services . . . . Except for ceilings or maximum rates of reimbursement which are determined in accordance with rate determination methods imposed on nursing homes, any ceiling or maximum imposed by the rate setting commission upon the rate of reimbursement to be paid to rest homes shall reflect the actual costs of rest home providers and shall not prevent any such rest home provider from receiving full payment for costs necessarily incurred in the provision of services in compliance with federal or state regulations and requirements. . . . Each rate established by the commission shall be deemed a regulation."

General Laws c. 6A, § 36, provides that any party aggrieved by an interim or a final rate set by the commission may appeal to what is now the division of administrative law appeals of the Executive Office for Administration and Finance, G. L. c. 7, § 4H, as appearing in St. 1983, c. 683. "On appeal, the rate determined for any provider of services shall be adequate, fair and reasonable for such provider, based, among other things, on the costs of such provider." G. L. c. 6A, § 36, inserted by St. 1973, c. 1229, § 2. Alternatively, to challenge

a regulation of general Statewide applicability, a party may seek direct judicial review under G. L. c. 30A, § 7, and G. L. c. 231, §§ 1 and 2. *Massachusetts General Hosp.* v. *Rate Setting Commn.*, 359 Mass. 157 (1971). *Massachusetts State Pharmaceutical Assn.* v. *Rate Setting Commn.*, 387 Mass. 122, 126-128 (1982). *New England Memorial Hosp.* v. *Rate Setting Commn.*, 394 Mass. 296, 297 n.4 (1985). See and compare *Geriatric Authy. of Holyoke* v. *Rate Setting Commn.*, *post* 953 (1986).

Our courts have recognized that in setting rates the commission need not recognize all of a provider's actual costs. *Affiliated Hosps. Center, Inc.* v. *Rate Setting Commn.*, 7 Mass. App. Ct. 563, 572-577 (1979). This is because "[t]he legislation in its entirety was intended to commit to the Commission the authority necessary 'to stabilize hospital charges . . . [and] to control the costs of purchasing hospital care in the Commonwealth' (quoted from the preamble to the predecessor law, St. 1975, c. 424)." *Mercy Hosp.* v. *Rate Setting Commn.*, 381 Mass. 34, 39 (1980). In determining what is a fair and reasonable rate for reimbursement of nursing homes for the care of publicly aided patients, the commission "must balance [against the interests of those patients and of nursing homes] the interests of the Commonwealth and its taxpayers in avoiding exorbitant expenditures." *Murphy Nursing Home, Inc.* v. *Rate Setting Commn.*, 364 Mass. 454, 462 (1973).

The commission has adopted regulations for rates of payment to nursing home facilities. 114.2 Code Mass. Regs. 2.00 et seq. The regulations on which Lynn's claim is based are §§ 2.04 (6) and 2.05 (1), which concern final and interim reimbursement rates, respectively. Those regulations provided for ceilings of $70 in 1982, and $72 in 1984, on the per diem reimbursement rate.[5]

---

[5] Title 114.2 Code Mass. Regs. 2.04(6), as in effect on December 31, 1984, provided:

"*Rate Limitation.* No final rate of payment established under 114.2 CMR 2.00 shall exceed the lower of the rate charged by the provider to private or third party payors for the same or similar services and accommodations, or $72.00. The limitation of $72.00 shall not apply to rates established for pediatric facilities or units."

Title 114.2 Code Mass. Regs. 2.05(1), as in effect on December 31, 1984,

*Resolution of the Apparent Conflict Between Proposition 2½ and Certain Regulations of the Rate Setting Commission.*

On appeal Lynn argues that, having established that the regulations in issue took effect after January 1, 1981, that they have resulted in additional costs to Lynn which are reflected in its property tax rates, and that no provision has been made for the Commonwealth to pay those additional costs, nothing more is required to bring its claim within G. L. c. 29, § 27C(*c*). For purposes of assessing the propriety of the allowance of the commission's motion for summary judgment, we assume to be true the facts upon which Lynn relies. The motion judge gave several reasons for ruling that the section of Proposition 2½ on which Lynn relies did not render the challenged regulations ineffective against Lynn. The principal reason stated by the motion judge, and the only one of the judge's stated reasons relied upon by the commission on appeal, is that the regulations did not *mandate* any city expenditure, the provision of the services being voluntary on Lynn's part.[6] We need not resolve

---

provided in pertinent part:

"*Interim Per Diem Rate.* The interim rate effective October 1, 1983 through January 31, 1984 shall be computed by adding one and seven tenths percent (1.7%) to the interim rate in effect on September 30, 1983. The interim rate of payment effective for the eight (8) month period beginning February 1, 1984 shall be the sum of elements set out in 114.2 CMR 2.06 through 2.11, each computed for the second preceding calendar year on a per diem basis, with modifications set forth in 114.2 CMR 2.05. The interim rate of payment shall be established whenever possible on the basis of on-site audited data; otherwise, the interim rate of payment shall be established on the basis of data which has been the subject of a desk audit. Costs and expenses included in determining a provider's interim rate of payment are subject to all limitations and conditions set forth in 114.2 CMR 2.00, unless specific exceptions are set forth in 114.2 CMR 2.05. In the case of multilevel facilities which include resident care units, separate interim per diem rates shall be computed for those beds licensed for residential care. . . . No interim rate of payment established under 114.2 CMR 2.05 shall exceed the lower of the rate charged by the provider or third party payors for the same or similar accommodations, or $72.00. The limitation of $72.00 shall not apply to rates established for pediatric facilities or units."

[6] In concluding that G. L. c. 29, § 27C(*c*), applied only when a State administrative rule or regulation obligated a municipality to expend its funds to provide a new service, the judge relied on the general description of the

in this case whether G. L. c. 29, § 27C (c), applies only to mandatory expenditures, however, because we are persuaded for other reasons that the voters did not intend that Proposition 2½ would invalidate regulations adopted by the commission pursuant to G. L. c. 6A, § 32. Thus, we affirm the judgment although we reach our conclusion via a route different from that taken by the motion judge.

Very simply, this is not a situation in which the Commonwealth has failed to appropriate funds to pay for a municipal service. The Legislature had made clear its intention long before the passage of Proposition 2½ that the costs in issue, to the extent they are recognized as reasonable, be paid by the Commonwealth. It provided by statute for reimbursement by the Commonwealth to municipalities providing public nursing home services at "fair, reasonable and adequate rates." G. L. c. 6A, § 32. Compare *Regents of Univ. of California* v. *Heck-*

---

"local mandate" provision in *Massachusetts Teachers Assn.* v. *Secretary of the Commonwealth*, 384 Mass. 209, 216 (1981), quoted above. That language strongly suggests that the entire section (G. L. c. 29, § 27C) applies only to mandatory expenditures. See also *Mayor of Boston* v. *Treasurer & Receiver General*, 384 Mass. 718, 731 (1981) (Hennessey, C.J., dissenting). The meaning of the specific language used in § 27C(c), in the context of a particular dispute, however, was not in issue in those cases. We think a closer look at the language of the section as a whole lends support to Lynn's contention that § 27C(c), dealing with regulations, unlike § 27C(a), dealing with statutes, applies without regard to the obligatory nature of the expenditures. Subsection (a) applies to laws "imposing any direct service or cost obligation upon any city." Subsection (c), on the other hand, applies to regulations "which shall result in the imposition of additional costs upon any city." The use of the word "imposition" in (c) may create some ambiguity as to its meaning. The ordinary meaning of that word by itself does imply some compulsion. See Webster's Third New International Dictionary 1136 (1968) (impose means "to make, frame or apply [as a charge, tax, obligation, rule, penalty] as compulsory, obligatory or enforcible"). But the significant differences in wording between the two subsections suggests, as Lynn argues, that subsection (c) was intended to have a broader application than subsection (a). For purposes of determining what services the Commonwealth must pay for, however, we can imagine no logical justification for treating a statute differently from an administrative regulation, particularly one of general application. *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 138 (1949). But see *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge*, 395 Mass. 535, 560 (1985) (Lynch, J., dissenting).

*ler*, 756 F.2d 1387, 1393 (9th Cir. 1985, concerning the Federal Medicare program). This case, therefore, is altogether different from *Lexington* v. *Commissioner of Educ.*, 393 Mass. 693 (1985), in which the State made obligatory the provision of new services without providing for any reimbursement to the municipalities for the cost of providing those services.

Lynn's position with regard to the challenged regulations, in essence, is that they are invalid because they impose a flat ceiling without regard to the actual costs of an individual institutional provider. Lynn may very well be correct in its view that such a ceiling, particularly as applied to a municipality,[7] is arbitrary, capricious, and invalid because it is inconsistent with G. L. c. 6A, § 32. Lynn does not argue to us in this case, however, that the regulation is invalid under § 32. Its claim here is that the regulations are invalid, instead, under Proposition 2½. However, Lynn also has appropriately requested an administrative review of the challenged regulations under G. L. c. 6A, § 36.[8] Since the regulations in issue, to the extent that they impose a ceiling, are of general Statewide applicability, alternatively, as we noted above, it may be that direct judicial review of their validity under G. L. c. 6A, § 32, would be available under G. L. c. 30A, § 7, and G. L. c. 231A. Thus, Lynn has available to it an adequate remedy if the regulations do fail to provide for reimbursement by the Commonwealth at rates which are fair, reasonable and adequate. On the record before the motion judge, he had no basis, nor do we, for setting

---

[7] The city of Salem and the city of Cambridge, in their amici curiae brief, argue effectively that because the nursing home industry is labor-intensive, and because municipalities are required to bargain collectively with labor unions, municipalities unavoidably incur greater labor costs than many private facilities that operate without union labor.

[8] Lynn argues that it need not, as a condition precedent to bringing suit, exhaust its administrative remedies because to do so would be futile. It points to other cases in which the hearing officers have refused to consider a claim that the challenged regulations violate Proposition 2½. What we are saying, however, is that Lynn has not exhausted its remedies, administrative or judicial, for its assertion that the regulations are invalid under G. L. c. 6A, § 32, in that they do not provide Lynn with the right to reimbursement by the Commonwealth for all of its reasonable and necessary costs. Lynn has not shown those available remedies to be futile.

aside the regulations as arbitrary or capricious or inconsistent with the standards set forth in G. L. c. 6A, § 32. Indeed, that was not the basis of the challenge in Lynn's complaint to the regulations. Absent such a basis, the regulations are entitled to deference. *Massachusetts State Pharmaceutical Assn.* v. *Rate Setting Commn.*, 387 Mass. at 127. If the regulations should ultimately be ruled invalid, then Lynn would be entitled to have reimbursement rates established administratively and subject to judicial review. Those rates, finally determined, would be fair, reasonable and adequate for the years in question. If the regulations should ultimately be upheld, on the other hand, then the additional costs Lynn is seeking would be costs which exceed what would have been determined to be fair, reasonable, and adequate.

We do not think the people, adopting Proposition 2½, a measure "relat[ing] directly or indirectly to the limitation of State and local taxation" (*Massachusetts Teachers Assn.* v. *Secretary of the Commonwealth*, 384 Mass. 209, 221 [1981]), intended that measure to be the vehicle for imposing on the State's taxpayers the burden of paying costs which have been determined under the elaborate rate setting mechanism to be unreasonable. Were we to reach a contrary result, only municipally-operated nursing homes would be exempt from the commission's regulatory power, exercised presumably for the purpose of controlling spiralling costs for medical services. In deciding as we do that the commission's regulations are not invalid under Proposition 2½, we do not intimate any lack of understanding of the important role municipalities play, and have historically played, in the delivery of nursing home and other hospital services. But municipalities too must strain for efficiency and keep their costs for services to publicly-assisted patients within the limits properly set by the commission.

*Judgment affirmed.*